CASE 36—PETITION EQUITY—FEBRUARY 16.

## Francis vs. Smith.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. F., by his covenant, bound himself to assume all the debts and liabilities of S. in the late firm of S. & O., and to save S. harmless on account of all such debts. *Held*—That a creditor of the firm was entitled by substitution to a personal judgment against F. on his covenant, S. consenting thereto.

2. Other creditors of the firm, although parties to the suit, were not entitled to judgment against S., because they failed to serve him with process on their pleadings in which they assert a right to such relief.

G. A. & J. CALDWELL, for appellant, cited *Act of* 1857, *Stanton's Code, p.* 63 ; 1 *Met.,* 484 ; *Story on Part., secs.* 152, 153 ; 2 *Story's Eq., sec.* 769 ; 2 *Kent,* 676.

HARRISON & BENNETT, for appellee, cited 1 *J. J. M.,* 203 ; 3 *J. J. M.,* 293 ; 3 *Marsh.,* 459 ; 5 *J. J. M.,* 181.

DEMBITZ & BIJUR on same side.

CHIEF JUSTICE DUVALL DELIVERED THE OPINION OF THE COURT:

Smith & Omer were partners in a retail grocery store in Louisville. Smith, on the 18th of April, 1860, sold his interest in the firm effects to the appellant, Francis. The rule is evidenced by a writing of that date, in which it is stipulated that Francis was to pay Smith for his interest one hundred dollars in groceries, at cash prices, whenever desired, and one hundred dollars more in the same way, on the 25th day of December, 1860, and to deliver to Smith, on his demand, a bay horse and spring wagon ; and, "further agrees and binds himself to assume all the debts and liabilities of said B. F. Smith in the late firm of Smith & Omer, and to save Smith harmless on account of all debts whatever of said firm," &c.

On the 20th of the same month Omer made a general assignment to Francis of all the property and assets of the late firm of Smith & Omer for the payment of the firm debts ; and of the individual property of Omer for the payment—*first*, of his individual debts, and, *secondly*, of the debts of the firm. The trust created by this assignment was accepted by Francis.

On the 27th of the same month Bremaker & Co. filed their petition in the Louisville chancery court, claiming to be creditors of the late firm of Smith & Omer, setting up the contract between Smith and Francis, and the assignment from Omer to Francis, praying a personal judgment for their debt against Smith, Omer, and Francis, and, also, for the subjection of the trust effects to the payment of their debt. In May following Danaway brought a similar action against the same parties, and the two cases were heard together.

The demurrer of Francis to the petitions having been overruled, he answered, alleging that his contract with Smith was procured by the fraudulent representations and concealments of the latter with respect to the condition of the firm, denying his personal liability upon that contract either to Smith or to the creditors of the firm, and prays a rescission of said contract, and for judgment against Smith for the value of the horse and wagon he had delivered to him in part discharge thereof. He makes his answer a cross-petition against Smith & Omer.

Smith answered this cross-petition, denying the alleged fraud, prays that his contract with Francis may be enforced, and that Francis be compelled to pay to the creditors of the firm of Smith & Omer their respective claims, and that those creditors be substituted to the rights of Smith under that contract as to the payment of their debts, and for this purpose he makes his answer a cross-petition against Francis. He states the names of seven individuals and firms who were creditors of Smith & Omer at the date of the sale to Francis, and that there were other creditors whose names were not known or recollected. But none of them are made parties.

Francis, in answer to this cross-petition, reiterates his charge of fraud in the procurement of the contract, and denies his

liability to the creditors of Smith & Omer upon all or either of the grounds relied on.

The firm of Allen, Moore & Haydon answered the petition of Bremaker & Co., although they had not then been made parties, setting up their debt against Smith & Omer, praying satisfaction out of the effects assigned in trust to Francis, and praying also a personal judgment against the latter on his covenant to Smith. This answer was not in terms made a cross-petition, nor was there any process on it against Francis. But they, together with Lane & Bartlett and J. M. Lilly, were subsequently made defendants, and, thereupon, Lane & Bartlett and Lilly filed answers asking the same relief; but no summons issued thereon against Francis, who neither answered nor appeared to any of those pleadings.

The names of numerous other creditors of Smith & Omer appear in the report of the commissioner, as having been furnished him by Francis, for the purpose of a settlement and distribution of the trust fund. In no other way were these last named creditors before the court, or parties to the proceeding.

The chancellor, on the final hearing, rendered a judgment applying the proceeds of the sale of the trust effects to the payment of the firm debts of Smith & Omer, according to the terms of the deed from Omer to Francis; also a personal judgment in favor of each of the creditors of Smith & Omer, against Francis, for the amount of their respective debts, credited by the amount to which each was entitled of the trust fund; and, also, a judgment in favor of Smith against Francis for two hundred dollars, being the value of the groceries stipulated to be paid by the latter to the former, in their contract. The petition of Bremaker & Co. was dismissed, their debt having been paid prior to the trial. Executions were awarded on the personal judgments against Francis, and his cross-petition was dismissed. No personal judgments were rendered against either Smith or Omer, in favor of any of the creditors; but the causes were " retained for such personal judgment against Smith & Omer in favor of such creditors as shall appear equitable," and also for a further settlement of the trust,

&c. From that judgment Francis has appealed; relying upon various grounds of reversal, which we proceed to notice.

1. He insists that the contract between him and Smith should have been rescinded on the ground that it was fraudulently procured, as charged in his cross-petition. Without going into an examination in detail of the voluminous and contradictory evidence on this point, we deem it sufficient to express our concurrence with the chancellor in his conclusion that the charge of either fraudulent misrepresentation or of fraudulent concealment on the part of Smith in the sale of his interest to the appellant, is not sustained by the evidence.

2. The appellant contends that none of the creditors of Smith & Omer, not even Danaway, the plaintiff in one of the two actions, were entitled to a personal judgment against Francis on his covenant to Smith, because the creditors were neither parties nor privies to the contract, and no ground for substituting the creditors to the rights of Smith, under that contract, is shown to exist.

The only difference between this case and that of *Millet vs. Parker* (2 *Met. Ky. Rep.*, 610), is, that in the latter case not only the firm, but both the members composing it, were shown to be insolvent; whilst in the present case, though the firm is shown to be insolvent, Smith, one of the members, is not. But this distinction is immaterial and cannot be allowed the effect contended for. Smith is a party to the action, and in his answer and cross-petition not only consents, but *asks*, that the creditors of the firm be substituted to all his rights under the contract. It was decided, and correctly decided, that that contract was obligatory on Francis, and by its terms he was bound to assume all the debts and liabilities of Smith in the late firm, and to save Smith harmless on account of those debts. Such being the case, and the proper parties being before the court, it was eminently proper, and entirely consistent with the principles which uniformly control courts of equity in administering complete justice, that a comprehensive judgment should have been rendered, allowing the substitution of the creditor to the rights of Smith under the covenant which was intended for his protection, thereby avoiding circuity of action, and

fixing at once the liability on the party on whom it must ultimately fall. Smith might have had a right to complain of the substitution, had he not assented to it; but certainly no one else can.

3. But the personal judgments in favor of the other creditors are clearly erroneous. Some of those creditors were not parties to the action, either as plaintiffs or defendants. Some others were made defendants and answered, asserting their right to a personal judgment against Francis, but failed to serve him with process upon their several pleadings.

The ground on which the chancellor placed his jurisdiction to render judgments in favor of all these creditors was, as stated in his opinion, that it was " difficult to see any good reason why, if, at the instance of a firm creditor provided for in the deed of trust, and yet not a party to the deed, the trust effects can be subjected to the payment of the trust debts, a covenant on the part of Francis to Smith, to pay or assume the debts of S.nith to the firm creditors, may not also be enforced, even though the creditors are not direct parties to the covenant."

We have already decided that Danaway, one of the firm creditors, could enforce this covenant, and have stated the grounds on which he was entitled to such relief. But it by no means follows that all the other creditors, whether parties or not, were entitled to the same relief. Where there are a number of creditors who are parties to, or beneficiaries under a deed of trust for the payment of debts, the uniform practice is not to require all the creditors to be brought before the court as parties, but to allow them to prove their claims before the commissioners, and to distribute the proceeds of the trust estate according to the rights of all concerned. The reasons for this practice are, that the creditors have a common interest in the trust fund, and no one of them can obtain relief until the rights and interests of all are ascertained; and this involves the necessity of a complete settlement of the entire trust; and, moreover, as said by Judge Story, " in these, and many other instances, the difficulty of administering substantial justice between the creditors, if the court were compelled to

wait until all of them were technically parties before the court, would be almost insuperable." (*Eq. Pl., sec.* 103.)

But in the covenant of Francis to Smith there is no such community of interest on the part of the creditors. The rights of each creditor are personal and separate, and may be enforced by each without regard to the others. It is obvious, therefore, that none of the reasons of the rule applicable to the settlement and distribution of a trust fund, exist in the present case. Under our system of civil procedure, no *personal* judgment can be rendered in favor of any party who has not asserted his right, by appropriate pleading and the service of process upon the party from whom such relief is sought. We are aware of no exception to this rule.

It results that the personal judgments in favor of all the appellees, except Danaway and Smith, were irregular and invalid. Those judgments are, therefore, reversed, and the cause remanded for such further proceedings as may be proper, not inconsistent with the principles of this opinion.